IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

BRIAN D. CRANFORD,            )
                              )
            Plaintiff,        )
                              )
      v.                      )        1:15CV987
                              )
EDDIE KLUTTZ and REESE HELMS, )
                              )
            Defendants.       )

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

This matter comes before the court on the parties' cross-motions for summary judgment. Defendants Eddie Kluttz ("Defendant Kluttz") and Reese Helms ("Defendant Helms") have moved for summary judgment (Doc. 22), to which Plaintiff Brian Cranford has responded (Doc. 31), and Defendants have replied (Doc. 36). Plaintiff has also moved for summary judgment (Doc. 25), to which Defendants have responded (Doc. 34), and Plaintiff has replied (Doc. 37). This matter is now ripe for resolution. For the reasons stated herein, this court will grant Defendants' motion. Plaintiff's motion will be denied.

## I. BACKGROUND

### A. Facts and Procedural Background

#### i. Background

The majority of the facts in this case are relatively undisputed, as a large part of the activities at issue were either videotaped or audiotaped. Two significant factual disputes are present. The first factual dispute arises from the question of whether Plaintiff's preaching involved a general admonishment to the crowd as a whole when Plaintiff used the terms "tramps, whores, and prostitutes" or whether Plaintiff directed those comments to a specific individual in the crowd. The second dispute relates to the legal effect of Plaintiff's conviction in state district court of the offense of Disorderly Conduct in violation of N.C. Gen. Stat. § 14-288.4; the conviction was followed by an acquittal of that offense in state superior court. While the parties suggest different interpretations of the evidence of the actions of Plaintiff, the principle issue is whether Plaintiff has presented evidence sufficient to create a material issue of fact as to whether the conviction in state district court was obtained by fraud or unfair means. This court finds there are sufficient undisputed facts to render summary judgment determination appropriate.

In his own words, Plaintiff is a "Christian[] that take[s]
a Bible out on the street and just preach[es]," which some call
"street preaching." (Pl.'s Br. in Supp. of Mot. for Summ. J.
("Pl.'s Br."), Ex. 1, Excerpts from Dep. of Brian Douglas
Cranford ("Pl.'s Dep.") (Doc. 26-2) at 3.)[1] According to
Plaintiff, he engages in street preaching "almost every
afternoon," usually focusing on "local towns" or "surrounding
towns" and that "then on the weekends, [he] usually travel[s]."
(Id.)

On July 20, 2013, the Town of China Grove, North Carolina,
held its annual "Farmers Day Festival" ("Festival") and
Plaintiff decided to preach during the festival. (Pl.'s Br.,
Ex. 4, Pl.'s Resp. to Defs.' First Set of Interrogs. (Doc. 26-5)
at 3-4.) Plaintiff alleges that, when he arrived at the
Festival, he received a "sheet of paper" or "ordinance"
detailing "festival rules." (Pl.'s Dep. (Doc. 26-2) at 9.) In
his deposition, Plaintiff explained that "[i]f you want to pass
out literature or to speak on anything open, you had to have a
booth. You had to be a vendor." (Id.) Plaintiff did not elect to
proceed as a "vendor," instead choosing to stand "outside of the

---

[1] All citations in this Memorandum Opinion and Order to
documents filed with the court refer to the page numbers located
at the bottom right-hand corner of the documents as they appear
on CM/ECF.

barricade" to preach. (Id. at 10.) Plaintiff preached for over an hour before he was arrested.

While preaching at the Festival, Plaintiff wore an audio recording device under his shirt. (Id. at 7–8.) One of Plaintiff's colleagues also filmed a video of some of the events that transpired on July 20, 2013. (Id. at 11.)

### ii. **Audio Recording**

Plaintiff began preaching at the 6:55 mark[2] of the audio recording. (Defs.' Mem. of Law in Supp. of Defs.' Mot. for Summ. J. as to All Claims ("Defs.' Br.") (Doc. 23), Ex. 7, Audio recording filed manually (Audio Disc) at 6:55.) At the 10:53 mark, Defendant Helms asked to talk to Plaintiff before informing Plaintiff that "you're more than welcome to be here, okay, but to be here, you have to purchase a booth." (Id. at 11:00-11:05.) Upon Plaintiff's resistance, Defendant Helms read, from what he later described as the "rules and regulations for Farmers Day," the following:

> Any person or group wishing to hand out materials or provide information to the public must register with the town of China Grove for a booth within the festival area. No person or group will be allowed inside the festival area to approach visitors with material, verbal, printed or otherwise, unless they register with the town of China Grove.

---

[2] All timestamps and quotations from the audio or video recordings are approximate and are reproduced to the best of the court's ability.

(Id. at 15:29-15:47.) Following an argument with Defendant Helms and another bystander regarding his First Amendment rights in which Defendant Helms told Plaintiff that if he did not move to the other side of the barricade he would be arrested, Plaintiff moved outside the barricade marking Festival grounds and resumed preaching. (Id. at 20:48.)

During the time period between Plaintiff moving to the other side of the barricade and the span for which video footage exists, Plaintiff preached and interacted with festival attendees. (See id.) At multiple points, Plaintiff expressed a continued willingness to enter the barricade and an expectancy to "go to jail" as a result. (Id. at 26:56, 27:30, 28:40, 32:35, 38:30.) At the 32:16 point, Plaintiff told a festivalgoer that "there's video cameras all over [Defendants] right now." (Id.) Plaintiff also expressed that he was "fixin' to cross the line here in a minute." (Id. at 32:27.)

Around the 45:28 mark, following a contentious exchange with a specific festivalgoer, Defendant Helms approached Plaintiff and said, "You're not gonna be disrespectful." (Id.) Plaintiff responded, "Loud mouth rebellious ladies like this, she needs to keep her mouth quiet." (Id. at 46:06-46:15.) Defendant Helms responded, "I'm gonna ask you one more time — don't start causing issue with the people. You can preach, but

- 5 -

that has nothing to do with talking about people." (Id. at 46:15-46:30.) Plaintiff then called the police officers "wicked," said Defendant Helms was "digging a hole deeper for hisself and deeper for hisself," and said to Defendant Helms, "You're wicked as hell, you're gonna be on your way to hell, officer." (Id. at 47:58-48:07.) Plaintiff later called Defendant Helms "a sinner" and "wretched." (Id. at 1:03:45.)

Plaintiff continued to accost individual festivalgoers. (Id. at 57:58.) Plaintiff also said, "See I know most of you people, you'd love nothing more to come punch a preacher in his face. Oh, but you're not gonna do anything." (Id. at 58:54.)

The exchange leading to Plaintiff's arrest occurs from 1:08:09 to 1:09:35. Plaintiff begins:

> Oh, God's gonna judge you, wicked sinner — I'm talking to you. All you ladies need to learn how to put on some clothes, too. I'm talkin' to her. I'm talkin' to your family members. And all of those ladies over there. The Bible says that a woman should dress modestly. See a lot of ladies out here dressed like tramps and whores and prostitutes today. The Bible says you dress modestly. Today all you ladies who's dressed half-nekkid out here.

(Id.) Defendant Helms interrupted him, "Sir, you cannot call people whores and prostitutes." Plaintiff immediately responded, "The Bible says it calls 'em whores and prostitutes." (Id.) Defendant Helms said, "If you say that one more time, I'ma place

you under arrest" and Plaintiff again immediately responded,
"You can't be whores and prostitutes, you can't be." (Id.)

### iii. **Video Recording**

The video generally shows Plaintiff from behind, as it
appears the videographer was standing some distance behind
Plaintiff. The video shows Defendant Helms standing away and to
the front of Plaintiff, inside the barricade and beside a car.
At various times, as the camera pans from side to side, it
appears that one or more police officers may be standing to
Plaintiff's left, off the street and on the corner, several feet
away from Plaintiff.

During much of the time Plaintiff was preaching, he was
forceful but did not appear to cause any fear in bystanders. An
older woman using a walker walked past Plaintiff and appeared to
pay him no attention. (Defs.' Br. (Doc. 23), Ex. 5, videotaped
recording filed manually (Video Disc) at 01:55.) A young woman
walked by and appeared to giggle after she passed him. (Id. at
2:36.) However, in the preaching preceding Plaintiff's arrest,
his rhetoric, motions, and mannerisms could be construed to be
more directed toward those standing and watching. Nevertheless,
even assuming there to be issues of fact as to the events
preceding Plaintiff's arrest, it does appear something occurred

immediately preceding Plaintiff's arrest causing officers to respond.

In the video, 14:42 marks the point where Plaintiff said, "Oh, God's gonna judge you, wicked sinner." (Id. at 14:42.) As he said that phrase, Plaintiff extended his right arm parallel to the ground and pointed using his index finger in the direction of a group of people inside the Festival. (Id.) Plaintiff raised his finger and pointed again as he said "talkin' to her" at the 14:50 mark. (Id.) Plaintiff then said "talkin' to your family." (Id. at 14:51.) Plaintiff then pointed again with his left arm and index finger in the same general direction as he said, "And all of those ladies over there . . . the Bible says that a woman should dress modestly." (Id. at 14:54-14:49.) One second later in the video, beginning at 14:50, Plaintiff continued, "see a lot of ladies out here dressin' like tramps and whores and prostitutes."

At this point, Defendant Helms's daughter and wife turned and spoke to him. (Id. at 15:07.) Defendant Helms then spoke into his radio briefly before approaching Plaintiff. (Id. at 15:25.) When Defendant Helms reached Plaintiff, Defendant Helms said, "You cannot call [inaudible] 'whores and prostitutes.'" (Id. at 15:30.) Defendant Helms then arrested Plaintiff following the exchange detailed above. (Id. at 15:40.)

### iv.  **Legal Proceedings**

In his deposition, Defendant Helms testified that he arrested Plaintiff for "disorderly conduct." (Defs.' Br., Ex. 6, Excerpts from Dep. of Reese Helms ("Helms Dep.") (Doc. 23-6) at 15.) On the same date as Plaintiff's arrest, July 20, 2013, Defendant Helms then brought Plaintiff before Magistrate G.L. Jones, who issued a "Warrant for Arrest." (Id., Ex. 9, Arrest Warrant for Brian Douglas Cranford, Disorderly Conduct, GS 14-288.4, Case number 13-CR-054457 ("Arrest Warrant") (Doc. 23-8) at 2.)

> The Arrest Warrant says the following:
>
> I, the undersigned, find that there is probable cause to believe that on or about the date of offense shown and in the county named above the defendant named above unlawfully and willfully did intentionally cause a public disturbance at PARK ST AND MAIN ST (CHINA GROVE FARMERS DAY), by making utterances and using abusive language, intended and plainly likely to provoke immediate retaliation and thereby cause a breach of the peace. The acts of the defendant were directed toward HEAVEN LEE HELMS AND OTHER UNNAMED FEMALE PERSONS and consisted of THE DEFENDANT SHOUTING TO THE VICTIMS THAT THEY WERE WHORES AND PROSTITUTES, MAKING REFERENCE TO THE WAY THEY WERE DRESSED.

(Id.) The Arrest Warrant specifies the "Offense in Violation of G.S." as "14-288.4." (Id.) N.C. Gen. Stat. § 14-288.4 provides that "[d]isorderly conduct is a public disturbance intentionally caused by any person who . . . Makes or uses any utterance, gesture, display or abusive language which is intended and

plainly likely to provoke violent retaliation and thereby cause a breach of the peace." N.C. Gen. Stat. § 14-288.4(a)(2).

On January 29, 2014, the Honorable Marshall Bickett found Plaintiff guilty of the charged offense in North Carolina district court. Plaintiff was represented by counsel in the district court. On January 15, 2015, following an appeal to Superior Court for a trial de novo, a jury found Plaintiff not guilty of the same charged offense. (Defs.' Br. (Doc. 23) at 9; Pl.'s Dep. (Doc. 23-4) at 11.)

### B. Claims

Plaintiff brings a total of three claims alleging violations of his constitutional rights. (Complaint ("Compl.") (Doc. 1) at 13-18.) Plaintiff's first claim alleges that Defendants violated his First Amendment "right to Freedom of Speech" by arresting him. (Id. ¶¶ 102-10.) Plaintiff's second claim alleges that Defendants violated his First Amendment right to free exercise of religion by arresting him. (Id. ¶¶ 111-24.) Plaintiff's third claim alleges that Defendants violated the Fourth Amendment by arresting him without probable cause. (Id. ¶¶ 125-35.)

For each claim, Plaintiff requests relief in the form of damages compensating him for the allegedly wrongful deprivation of his rights, paid bail, attorneys' fees for defending his

criminal prosecution, mental distress, reputational damage, and other harms. (Id. ¶¶ 110, 124, 135.) In addition to money damages, Plaintiff requests relief in the form of an injunction preventing Defendants "and all persons acting in concert . . . from enforcing the Code in the manner [Defendants] enforced it against this Plaintiff." (Id. at 19.)

Notwithstanding the description of claims under free speech and free exercise of religion as set forth above, the summary judgment briefing presents a serious issue with respect to the nature of the free exercise claims brought by Plaintiff in his Complaint. Specifically, the issue is whether Plaintiff's Complaint only alleges claims based upon an interference with or retaliation for the exercise of First Amendment rights as a result of Plaintiff's arrest or whether Plaintiff has also asserted a claim based upon an unconstitutional prior restraint through the Festival Rules. As explained in full below, after supplemental briefing and oral arguments on this issue, this court finds that the claims relating to the Festival Rules are not properly before this court, and that, even if considered, these claims are all subject to dismissal on the record before this court.

## II.  **LEGAL STANDARD**

Summary judgment is appropriate where an examination of the pleadings, affidavits, and other proper discovery materials before the court demonstrates that no genuine issue of material facts exists, thus entitling the moving party to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). The moving party bears the burden of initially demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323.

If the moving party has met that burden, then the nonmoving party must persuade the court that a genuine issue remains for trial. However, this requires "more than simply show[ing] that there is some metaphysical doubt as to the material facts"; the "nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986) (citations and footnote omitted) (quoting Fed. R. Civ. P. 56). In considering a motion for summary judgment, the court is not to weigh the evidence, but rather must determine whether there is a genuine dispute as to a material issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

Nonetheless, the court must ensure that the facts it considers can be "presented in a form that would be admissible

in evidence" and that any affidavits or evidence used to support

or oppose a motion are "made on personal knowledge, set out

facts that would be admissible in evidence, and show that the

affiant or declarant is competent to testify on the matters

stated." See Fed. R. Civ. P. 56(c)(2), (4).

The court must view the facts in the light most favorable

to the nonmoving party, drawing inferences favorable to that

party if such inferences are reasonable. Anderson, 477 U.S. at

255. However, there must be more than a factual dispute; the

fact in question must be material, and the dispute must be

genuine. Fed. R. Civ. P. 56(c); Anderson, 477 U.S. at 248. A

dispute is only "genuine" if "the evidence is such that a

reasonable jury could return a verdict for the nonmoving party."

Anderson, 477 U.S. at 248.

## III. **ANALYSIS**

Defendants argue that this court should grant their Motion

for Summary Judgment because they "are entitled to qualified

immunity on each of Plaintiff's constitutional claims."[3] (Defs.'

Br. (Doc. 23) at 10-21.) Plaintiff responds that Defendants are

not entitled to immunity because the magistrate's issuance of an

arrest warrant and Plaintiff's conviction were "obtained by

---

[3] Defendants make a number of arguments construing and
analyzing Plaintiff's claims as "First Amendment Retaliation"
claims.  (See Defs.' Br. (Doc. 23) at 12.)

unfair means, namely, false information." (Pl.'s Br. in Opp'n to
Defs.' Mot. for Summ. J. ("Pl.'s Opp'n Br.") (Doc. 31) at 27.)

"In determining whether a defendant is entitled to
qualified immunity, [this court] must decide (1) whether the
defendant has violated a constitutional right of the plaintiff
and (2) whether that right was clearly established at the time
of the alleged misconduct." Ross v. Early, 746 F.3d 546, 560
(4th Cir. 2014) (citing Bland v. Roberts, 730 F.3d 368, 391 (4th
Cir. 2013)); see also Maney v. Garrison, 681 F. App'x 210, 224
(4th Cir. 2017). Courts "have discretion to decide which of
those questions to address first 'in light of the circumstances
in the particular case at hand.' In many cases it is beneficial
to determine first whether the facts establish a violation of
the Constitution." Maney, 681 F. App'x at 215 (quoting Pearson
v. Callahan, 555 U.S. 223, 236 (2009)) (citing Estate of
Armstrong ex rel. Armstrong v. Vill. of Pinehurst, 810 F.3d 892,
899–900 (4th Cir. 2016)). "A defendant is entitled to qualified
immunity if the answer to either question is 'no.'" Williams v.
Hall, No. 5:11-CV-279-D, 2013 WL 3200512, at *3 (E.D.N.C.
June 24, 2013) (first citing Reichle v. Howards, 566 U.S. 658,
663 (2012); then citing Pearson, 555 U.S. at 236). "The
protection of qualified immunity applies regardless of whether
the government official's error is a mistake of law, a mistake

of fact, or a mistake based on mixed questions of law and fact."

Pearson, 555 U.S. at 231 (internal quotation marks omitted).

> [A] defendant cannot be said to have violated a
> clearly established right unless the right's contours
> were sufficiently definite that any reasonable
> official in the defendant's shoes would have
> understood that he was violating it. . . . "[E]xisting
> precedent must have placed the statutory or
> constitutional question" confronted by the official
> "beyond debate."

Plumhoff v. Rickard, 572 U.S. ____, ____, 134 S. Ct. 2012, 2023

(2014) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011)).

"When deciding whether a right is clearly established, we ask

'whether it would be clear to a reasonable official that his

conduct was unlawful in the situation he confronted.'" Occupy

Columbia v. Haley, 738 F.3d 107, 124 (4th Cir. 2013) (quoting

Henry v. Purnell, 652 F.3d 524, 534 (4th Cir. 2011)).

Plaintiff brings three constitutional claims, but each of

Plaintiff's claims rests upon his contention that Defendant

Helms arrested him without probable cause. It may be that the

audio and video leave some facts subject to a dispute.

Nevertheless, Defendants' Motion for Summary Judgment is based

primarily upon undisputed facts: (1) Plaintiff was arrested and

charged with a violation of N.C. Gen. Stat. § 14-288.4; (2) upon

appearance before a state magistrate, a warrant was issued for

Plaintiff's arrest, charging that offense; and (3) Plaintiff was

convicted in state district court following a bench trial of a violation of N.C. Gen. Stat. § 14-288.4.

## A. Festival Rules and Unconstitutional Time and Place Restrictions

At the outset, this court finds it necessary to determine whether the Festival Rules in question are properly before the court. Plaintiff dedicates a significant portion of his briefing to arguing that the Festival Rules requiring Plaintiff to remain behind the barricade or purchase a booth as a vendor placed an unconstitutional restraint on speech for which Defendants are liable. (See Pl.'s Br. (Doc. 26) at 9-20; Pl.'s Opp'n Br. (Doc. 31) at 8-13.) Plaintiff argues that Defendant Helms's act of advising Plaintiff of those Rules and then requiring that Plaintiff move outside the Festival barricade infringed Plaintiff's First Amendment rights. (See id.) Defendants object to this argument and claim, arguing that:

> Plaintiff alleges in his Motion for Summary Judgment that the Town's Festival Regulations, as applied to him, violated his free speech rights and free exercise rights under the First Amendment. See Doc. 26, pp. 9-20. However, Plaintiff's Complaint shows that he alleged only that Defendants' enforcement of N.C.G.S. § 14-288.4 violated his First Amendment rights. See Doc. 1, ¶¶ 2, 28, 29, 39, 70-82, 84, 89, 92, 95, 99, 100, 105, 108, 113, 115, 121, 122, and Prayer for Relief.

(Defs.' Resp. in Opp'n to Pl.'s Mot. for Summ. J. ("Defs.' Resp. in Opp'n") (Doc. 34) at 25 (footnote omitted).) Defendants

contend any issues with respect to the Festival Rules are not properly before the court. (Id. at 2.) This court agrees with Defendants that the Complaint does not allege a claim based upon the Festival Rules as an unconstitutional prior restraint, either time or place, of speech.

The confusing nature of Plaintiff's claims begins with the use of the term "Code" in the Complaint and the apparent limitation of the claims to injury and damages arising solely from enforcement of the "Code." In his Complaint, Plaintiff identifies only N.C. Gen. Stat. § 14-288.4 as the relevant "Code" provision by which he was deprived of his constitutional rights. (Doc. 1 at 1) ("This action challenges the interpretation and enforcement (as-applied challenge) of North Carolina General Statutes, § 14-288.4 (hereinafter 'Code')".) N.C. Gen. Stat. § 14-288.4 is a criminal statute and very different from any rules of the Festival. N.C. Gen. Stat. § 14-288.4 is clearly not the source of any rule of the Festival requiring Plaintiff, and others distributing information, to register as a vendor.

Following identification of the relevant "Code" provision in his Complaint, Plaintiff alleges a number of actions arising from and related to enforcement of the "Code." Plaintiff's Complaint alleges Plaintiff was exercising his rights outside

the Festival and in the public streets. Most relevant to this analysis, the Complaint alleges the following:

30. On July 20, 2013, Plaintiff was exercising his constitutional rights to Freedom of Speech and Free Exercise of Religion by peacefully sharing his Christian message **outside the Farmer's Market festival** (hereinafter "festival") while remaining entirely in the Town's Public Spaces.

31. On July 20, 2013, REESE HELMS approached Plaintiff and stated Plaintiff was trespassing.

32. On July 20, 2013, REESE HELMS stated Plaintiff was not welcome at the festival.

33. On July 20, 2013, REESE HELMS demanded that Plaintiff leave immediately.

34. On July 20, 2013, **Plaintiff replied he was outside the festival grounds.**

35. On July 20, 2013, REESE HELMS stated the festival organizers did not want Plaintiff anywhere nearby the festival.

36. On July 20, 2013, Plaintiff replied he was on a public sidewalk **outside the festival in an area open to the general public.**

37. On July 20, 2013, REESE HELMS stated that Plaintiff offended REESE HELMS's wife.

38. REESE HELMS's wife is the daughter of the EDDIE KLUTTZ.

39. On July 20, 2013, REESE HELMS arrested Plaintiff pursuant to the Code in cooperation and with the consent and approval of EDDIE KLUTTZ.

(Compl. (Doc. 1) ¶¶ 30-39 (emphasis added).)

Plaintiff further alleges that Defendants' "enforcement of the Code and their actions under color of state law have

deprived . . . Plaintiff of his constitutional rights." (<u>Id.</u> ¶ 80.) Plaintiff alleges, in his first and second causes of action, that "[a]s interpreted and enforced by [Defendants], Plaintiff's manner of Freedom of Speech is prohibited by the Code," (<u>id.</u> ¶ 105), and "Plaintiff's manner of Free Exercise of Religion is prohibited by the Code." (<u>Id.</u> ¶ 115.) Injunctive relief is requested, prohibiting Defendants "from enforcing the Code" in a manner to deprive Plaintiff of his constitutional rights. (<u>Id.</u> at 19.)

Plaintiff's allegations in the Complaint are clearly based solely upon enforcement of North Carolina state law by Defendants, and the Festival Rules are irrelevant to the claims as alleged as the activity at issue is alleged to have taken place <u>outside the Festival</u>. The Complaint never alleges, mentions, or suggests a claim based upon the Festival Rules, nor does the Complaint describe Defendant Helms's request that Plaintiff move from inside the Festival barricade to outside the Festival barricade.

The Festival Rules and the North Carolina General Statutes are two very different sets of rules, propounded by different entities and with different applications and consequences for violation of those rules. N.C. Gen. Stat. § 14-288.4 is a state law created by the legislature; violation of that statute is a

misdemeanor with corresponding criminal penalties. Furthermore, Plaintiff has not presented evidence sufficient to establish what governmental entity created the Festival Rules, if any. Plaintiff argues that "[t]own officials meet each year before the Festival to plan. Kluttz testified he is involved in planning and preparing the policies to be enforced during the Festival." (Pl.'s Br. (Doc. 26) at 4.) However, in the cited portion of Defendant Kluttz's deposition, Defendant Kluttz explained that "we're given [the rules and regulations] by the City," (Defs.' Br., Ex. 3, Excerpts from Dep. of Eddie Kluttz ("Kluttz Dep.") (Doc. 26-4) at 3), but does not identify the source of the rules or the nature of the rules. Plaintiff offers no further evidentiary support for the proposition that Defendant Kluttz had any involvement in the promulgation or creation of the Festival Rules.

The Festival Rules are filed as an exhibit (Defs.' Br., Ex. 6 (Doc. 26-7)), but those rules do not identify who created the rules, who is responsible for the creation of the rules, how those rules constitute government action, or what the circumstances were with respect to the Festival itself. While Defendants appear to concede that "[t]he Farmer's Day Festival is hosted annually by the Town of China Grove," (Defs.' Resp. in Opp'n (Doc. 34) at 5), no citation is presented for this

proposition and it is not clear who may have created the rules
of the Festival as relating to activities of the vendors and
attendees of the Festival. Plaintiff has not presented evidence
of any specific entities or individuals responsible for the
Festival Rules. "[C]ourts of course must place the burden of
persuasion on the plaintiff, not the defendant, because state
action is an element of a § 1983 claim." Brentwood Acad. v.
Tenn. Secondary Sch. Athletic Ass'n, 531 U.S. 288, 308–09 (2001)
(Thomas, J., dissenting) (citing Am. Mfrs. Mut. Ins. Co. v.
Sullivan, 526 U.S. 40, 49–50 (1999); West v. Atkins, 487 U.S.
42, 48 (1988)). Accordingly, the propriety of any China Grove-
created Festival Rules is not an issue before this court because
Plaintiff has not named an entity responsible for their creation
as a defendant.

Federal Rule of Civil Procedure Rule 54(c) provides that
"[e]very . . . final judgment should grant the relief to which
each party is entitled, even if the party has not demanded that
relief in its pleadings." This rule "permits relief predicated
on a particular theory only if that theory was squarely
presented and litigated by the parties at some stage or other of
the proceedings." Pinkley, Inc. v. City of Frederick, 191 F.3d
394, 400 (4th Cir. 1999) (quoting Rodriguez v. Doral Mortgage
Corp., 57 F.3d 1168, 1173 (1st Cir. 1995)) (internal quotation

marks omitted). Here, Plaintiff's Complaint does not plead a claim based on the Festival Rules nor does it seek relief in connection to the Festival Rules. Accordingly, Defendants' Answer does not once reference the Festival Rules. Prior to summary judgment, Defendants were not on notice of any claims with respect to the Festival Rules. This is illustrated by the fact that Defendants' Memorandum of Law in Support of Summary Judgment defends against claims connected to Plaintiff's arrest, as alleged by Plaintiff, and references the Festival Rules only in passing. (See generally Defs.' Br. (Doc. 23).) Plaintiff's Complaint "failed from the outset to give the defendants fair notice that they might be facing a [Festival Rules] claim." Pinkley, 191 F.3d at 401.

Furthermore, Defendants "never acceded to [this] claim, either expressly or implicitly." Id. This is evidenced by Defendants' adamant objections, after Plaintiff's Motion for Summary Judgment was filed, that the Festival Rules are not properly at issue in this case. (See, e.g., Defs.' Resp. in Opp'n (Doc. 34) at 25–29; Defs.' Reply to Pl.'s Br. in Opp'n to Defs.' Mot. for Summ. J. (Doc. 36) at 2–5.) Moreover, Plaintiff did not once move to amend his Complaint to include a claim that explicitly alleges claims relating to the Festival Rules. Accordingly, this court does not have Defendant's consent to

move forward at either summary judgment or trial with respect to the non-pled issue at hand.

This court believes that "[i]t would not serve the interests of justice . . . to redeem a totally unpleaded, unlitigated claim in circumstances that threaten significant prejudice" to Defendants, <u>Pinkley</u>, 191 F.3d at 402 (citing <u>Rodriguez</u>, 57 F.3d at 1171)), at this late date, after the time to amend the pleadings has passed. Accordingly, this court finds that a § 1983 claim against the named Defendants based upon the enforcement of the Festival Rules is not squarely presented and will therefore not be ruled upon by this court.

Nevertheless, even if such a claim was implicitly framed by the pleadings, this court is of the opinion that the evidence is not sufficient to support such a claim as to the named defendants. This inadequacy of evidence is further evidence of the unpled nature of the claim. This court finds that because the Festival Rules were not squarely presented in the Complaint or Answer, the parties have not presented evidence to support a finding that the named Defendants' enforcement of the Festival Rules infringed upon Plaintiff's clearly established rights. As a result, qualified immunity protects Defendants' actions on the facts before the court.

Both Defendant Kluttz and Helms have been sued in their individual capacities. Plaintiff did not name the Town of China Grove or either Defendant in his official capacity as a party in the present suit. (Compl. (Doc. 1) at 1; Civil Cover Sheet (Doc. 1-1 at 1.) Defendants argue that:

> [T]he regulations are not properly before the Court because Plaintiff has not asserted an official capacity claim against either Defendant or named the Town of China Grove as a party in interest in this suit. Defendants named in their individual capacity only cannot be personally liable for policies which they did not enact.

(Defs.' Resp. in Opp'n (Doc. 34) at 27.)

This court is not persuaded as to Defendants' analysis of these issues, but does agree with Defendants' conclusions in large part, that is, even if Plaintiff has alleged a claim based upon the Festival Rules, Defendants Kluttz and Helms are entitled to summary judgment on the basis of qualified immunity.

Defendants argue that, if the Festival Rules are properly before the court, first, the Rules constitute valid and lawful time, place, and manner restrictions under the First Amendment, and second, that they are entitled to qualified immunity. (Defs.' Resp. in Opp'n (Doc. 34) at 28 n.9.) As to their qualified immunity argument, Defendants argue that:

> [They] nevertheless would be entitled to qualified immunity in applying [the Festival Rules] because a reasonable officer would not have known that asking a street preacher to move over five feet to a position

where he could continue to preach for one and one-half
hours, thereby reaching the same audience he would
have reached from the location in which he desired to
stand, would violate a constitutional right, and it
was not clearly established on July 20, 2013 that
doing so would have violated the First Amendment in
terms of freedom of speech or freedom of religion.

Id.

In his summary judgment briefing, Plaintiff contends that
the Festival Rules prohibited him from preaching on the public
streets inside the Festival. (Pl.'s Opp'n Br. (Doc. 31) at 8.)
Those streets, according to Plaintiff, are a traditional public
forum, and his exclusion therefrom constitutes an infringement
of his First Amendment Rights. (Id. at 9.) Plaintiff further
argues that the case law on issues such as these "has been
established for many years, even decades" and that "no
reasonable person would ever accept the Festival rules or ever
attempt to enforce them." (Pl.'s Additional Br. Supp. Pl.'s Mot.
for Summ. J. ("Pl.'s Add'l Br.") (Doc. 55) at 12–13.)

"In determining whether a defendant is entitled to
qualified immunity, [this court] must decide (1) whether the
defendant has violated a constitutional right of the plaintiff
and (2) whether that right was clearly established at the time
of the alleged misconduct." Ross v. Early, 746 F.3d 546, 560
(4th Cir. 2014). "In reviewing Plaintiff's claims, the Court
finds it helpful to consider the applicability of qualified

immunity to each claim, beginning with the step of considering whether an objectively reasonable officer would have known [Defendant]'s conduct violated a clearly established constitutional right." Stokes v. Harris, No. 1:10CV935, 2014 WL 5149222, at *7 (M.D.N.C. Oct. 14, 2014). "To determine whether a federal right was clearly established at the time of the defendants' alleged conduct, we focus 'not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged.'" Jackson v. Long, 102 F.3d 722, 728 (4th Cir. 1996) (quoting Zepp v. Rehrmann, 79 F.3d 381, 385 (4th Cir. 1996)).

In considering time, place, or manner restrictions, the Supreme Court has provided the following guidance:

> Expression, whether oral or written or symbolized by conduct, is subject to reasonable time, place, or manner restrictions. We have often noted that restrictions of this kind are valid provided that they are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information.

Clark v. Cmty. for Creative Non-Violence, 468 U.S. 288, 293 (1984).

Here, the parties are in disagreement as to almost every aspect of the Festival Rules. Plaintiff characterizes the Festival Rules as granting Defendants "unfettered discretion" as

to render them content-based. (Pl.'s Opp'n Br. (Doc. 31) at 10.)
Defendants contend that the regulations are not content based.
(Defs.' Resp. to Pl.'s Additional Br. ("Defs.' Resp. to Add'l
Br.") (Doc. 56) at 4.) Plaintiff contends that the Rules are not
narrowly tailored to serve significant government interests,
(Pl.'s Opp'n Br. (Doc. 31) at 11), while Defendants contend that
they are. (Defs.' Resp. to Add'l Br. (Doc. 56) at 4 (pointing to
the compelling government interests of health and public safety
concerns).) Plaintiff argues that the Rules do not leave open
ample alternative channels of communication, (Pl.'s Opp'n Br.
(Doc. 31) at 11-12), while Defendants argue that they do.
(Defs.' Resp. to Add'l Br. (Doc. 56) at 4.) Adding to the mix of
considerations before the court on this issue, Plaintiff
unequivocally contends that the Festival was a public forum.
(Pl.'s Opp'n Br. (Doc. 31) at 9.) It is not immediately clear
that this is the case, because as evidenced in Defendant
Kluttz's deposition, the streets were closed to vehicular
traffic, (Kluttz Dep. (Doc. 26-4) at 4), and many aspects of the
Festival rendered the setting quite different from traditional
public forums.

   The Fourth Circuit has explained in the context of First
Amendment claims that, when answering a constitutional question
requires "a 'particularized balancing' that is subtle, difficult

to apply, and not yet well-defined," that it will rarely be considered "clearly established" for qualified immunity purposes. See DiMeglio v. Haines, 45 F.3d 790, 806 (4th Cir. 1995) (considering whether public employee's speech on a matter of public concern was constitutionally protected). In support of this general proposition, the Fourth Circuit cited:

> Medina v. City and County of Denver, 960 F.2d 1493, 1498 (10th Cir.1992) ("In determining whether the law was clearly established, we bear in mind that allegations of constitutional violations that require courts to balance competing interest may make it more difficult to find the law 'clearly established' when assessing claims of qualified immunity."); Borucki v. Ryan, 827 F.2d 836, 848 (1st Cir. 1987) ("[W]hen the law requires a balancing of competing interest, ... it may be unfair to charge an official with knowledge of the law in absence of a previously decided case with clearly analogous facts.") (citation omitted); Myers v. Morris, 810 F.2d 1437, 1462 (8th Cir.) ("[I]f the existence of a right or the degree of protection it warrants in a particular context is subject to a balancing test, the right can rarely be considered 'clearly established,' at least in the absence of closely corresponding factual and legal precedent."), cert. denied, 484 U.S. 828, 108 S.Ct. 97, 98 L.Ed.2d 58 (1987); Benson v. Allphin, 786 F.2d 268, 276 (7th Cir.) (A constitutional rule that "involv[es] the balancing of competing interests" is "so fact dependent that the 'law' can rarely be considered 'clearly established.' "), cert. denied, 479 U.S. 848, 107 S.Ct. 172, 93 L.Ed.2d 109 (1986).

Id.

To determine whether enforcement of the Festival Rules on the facts before the court constituted a violation of Plaintiff's First Amendment rights requires a multi-step, fact

intensive, balancing inquiry. It is not the case that an objectively reasonable officer would have known that his conduct violated a clearly established constitutional right in this situation. See <u>Brown v. Gilimore</u>, 278 F.3d 362, 367 (4th Cir. 2002).

In <u>Wood v. Moss</u>, the Supreme Court held that it was not clearly established whether Secret Service agents who moved protesters away from the President had an obligation to ensure that groups with different viewpoints were equal distance away from the President. ____ U.S. ____, ____, 134 S. Ct. 2056, 2067–69 (2014). Similarly, Defendants presented Plaintiff with two options: (1) buy a booth and continue preaching, or (2) preach from a few feet in another direction, behind the barricade. It is likely that a reasonable officer in Defendants' situation would not have viewed asking a preacher to move several feet along the same street he was originally preaching on as a clear violation of the individual's First Amendment rights. Accordingly, Defendants are entitled to qualified immunity with respect to their enforcement of the Festival Rules.

Finally, Plaintiff does not raise an argument under <u>Monell v. Department of Social Services</u>, 436 U.S. 658 (1978). (Pl.'s Opp'n Br. (Doc. 31) at 33 ("Cranford's <u>Monell</u> claim does not fail because he did not make a <u>Monell</u> claim.").) Despite this,

Plaintiff states in his supplemental briefing that "[i]f the Town did create the Festival rules, pursuant to Rule 15 of the Federal Rules of Civil Procedure the Court should allow Plaintiff to name the Town as an additional Defendant." (Pl.'s Add'l Br. (Doc. 55) at 8.)

As a preliminary matter, this request to name an additional defendant is untimely. The time for joining additional parties and amending pleadings has clearly passed. (Joint Rule 26(f) Report (Doc. 10) at 2 ("Plaintiff(s) should be allowed until April 29, 2016, to request leave to join additional parties or amend pleadings.").) The Joint 26(f) Report was adopted by the court on February 22, 2016. (Text Order.) Summary judgment has been fully briefed and any amendment of this magnitude will prejudice Defendants. The Complaint frames the issues for purposes of discovery and nowhere was this issue raised with respect to a facial or an as-applied challenge of the Festival Rules sufficient to put Defendants on notice. For this reason alone, Plaintiff's request to amend his Complaint pursuant to Rule 15 to add as a defendant the Town of China Grove and to further proceed with a claim as to the Festival Rules should be denied.

Furthermore, even if this court were to permit Plaintiff to amend his Complaint to include the Town of China Grove as an

additional defendant, this court is still not convinced that

doing so would lead to a different outcome on these facts and,

therefore, finds any motion to amend is futile. This is because

(1) for the reasons described above, the Festival Rules are not

properly before this court; and (2) if they were, Plaintiff has

not established that the rules are a policy or custom

attributable to the Town of China Grove.

"[M]unicipal liability [under § 1983] results only 'when

execution of a government's policy or custom, whether made by

its lawmakers or by those whose edicts or acts may fairly be

said to represent official policy, inflicts the injury.'" Spell

v. McDaniel, 824 F.2d 1380, 1385 (4th Cir. 1987) (quoting

Monell, 436 U.S. at 694). To establish municipal liability for

acts of municipal employees, Plaintiff must "prove the existence

of an official policy or custom that is fairly attributable to

the municipality and that proximately caused the deprivation of

[his] rights." Jordan by Jordan v. Jackson, 15 F.3d 333, 338

(4th Cir. 1994).

> A policy or custom for which a municipality may
> be held liable can arise in four ways: (1) through an
> express policy, such as a written ordinance or
> regulation; (2) through the decisions of a person with
> final policymaking authority; (3) through an omission,
> such as a failure to properly train officers, that
> "manifest[s] deliberate indifference to the rights of
> citizens"; or (4) through a practice that is so
> "persistent and widespread" as to constitute a "custom
> or usage with the force of law."

<u>Lytle v. Doyle</u>, 326 F.3d 463, 471 (4th Cir. 2003) (citing <u>Carter v. Morris</u>, 164 F.3d 215, 218 (4th Cir. 1999)).

First, as discussed above, Plaintiff has failed to introduce evidence from which this court could conclude that the Town of China Grove itself put forward the Festival regulations. A comprehensive review of all evidence in the record that might tend to suggest that the Festival Rules are attributable to the Town includes: (1) the Festival Rules cite the Town website (Pl.'s Add'l Br., Ex. 3 (Doc. 55-3) at 1); (2) Defendant Kluttz's deposition testimony that he was given the Festival Rules "by the City" (Kluttz Dep. (Doc. 26-4) at 3); (3) Officer Ernest Lamont Cole's deposition testimony that the Town puts the "guidelines for Farmers Day in the paper" (Pl.'s Add'l Br., Ex. 4 (Doc. 55-5) at 2); and (4) Defendants' statements in their brief that the Festival is hosted by the City (Defs.' Resp. in Opp'n (Doc. 34) at 6). Adding even more uncertainty into the mix, the audio recording reflects Defendant Helms describing the Festival Rules as "the rules of the County." (Defs.' Br., Ex. 7, Audio Disc (Doc. 23) at 16:30.) Furthermore, a search of the Town's municipal code does not produce the rules in dispute. <u>See generally</u>, China Grove, North Carolina, <u>Code of Ordinances</u>, Municode, https:// library. municode.com /nc/ china_grove/codes/ code_of_ordinances. Accordingly, there is no formally adopted

policy that the court could fairly attribute to the Town of China Grove.

Second, it is possible for municipal liability to arise "through the decisions of a person with final policymaking authority[.]" <u>Lytle</u>, 326 F.3d at 471. "[T]he identification of policymaking officials is a question of state law." <u>City of St. Louis v. Praprotnik</u>, 485 U.S. 112, 124-25 (1988)("[W]e can be confident that state law (which may include valid local ordinances and regulations) will always direct a court to some official or body that has the responsibility for making law or setting policy in any given area of a local government's business."). "If an official's acts are subject to review or supervision by a municipal policymaker, that official does not have final policymaking authority." <u>Alexander v. City of Greensboro</u>, 762 F. Supp. 2d 764, 783 (M.D.N.C. 2011) (citing <u>Riddick v. Sch. Bd.</u>, 238 F.3d 518, 523-24 (4th Cir. 2000)).

Here, it is possible that Defendant Kluttz, the chief of police, might have final policymaking authority. China Grove's Code of Ordinances provides, however:

> The chief of police shall be appointed by the town manager and shall have control over the police department under the supervision of the town manager. The chief shall keep the town manager informed of the department's activities and make such reports as the manager may from time to time require, and he shall perform such other duties as may be required of him by the town manager.

China Grove, North Carolina, <u>Code of Ordinances</u>, § 34-20,
Municode, https:// library. municode.com /nc/china_grove/codes
/code_of_ordinances. The Code of Ordinances also provides: "For
all matters pertaining to the government of the police
department not provided for by law or by this Code, the chief of
police shall recommend, for the approval of the town manager,
police department policies." <u>Id</u>. § 34-21. Accordingly, like the
Greensboro chief of police in <u>Alexander</u>, Defendant Kluttz's
policy decisions are subject to the approval of the town
manager, and thus not final. 762 F. Supp. 2d at 783. Therefore,
because Kluttz is not a final policymaking authority, any
decision made by him is not capable of triggering municipal
liability.

Nonetheless, Plaintiff points to Defendant Kluttz as having
been involved in the promulgation of the Festival Rules.
Plaintiff argues that "[Defendant] Kluttz testified he is
involved in planning and preparing the policies to be enforced
during the Festival." (Pl.'s Br. (Doc. 26) at 4.) However, in
Defendant Kluttz's deposition as cited by Plaintiff, Defendant
Kluttz explained that "we're given [the rules and regulations]
by the City." (Kluttz Dep. (Doc. 26-4) at 3.) Plaintiff offers
no further evidentiary support for the proposition that
Defendant Kluttz had any involvement in the promulgation or

creation of the Festival Rules and the record contains no evidence to the contrary. Accordingly, even if Defendant Kluttz had final policymaking authority, there is insufficient evidence to suggest that he was involved in the development of the Festival Rules in the first place.

Third, municipal liability may be triggered "through an omission, such as a failure to properly train officers, that 'manifest[s] deliberate indifference to the rights of citizens.'" <u>Lytle</u>, 326 F.3d at 471 (citing <u>Carter</u>, 164 F.3d at 218). On the facts before the court, it is unclear how this route to establishing municipal liability might apply in this case.

Fourth, it is possible for a municipal "custom or usage" to be treated as if it has the force of law despite "not receiv[ing] formal approval through the body's official decisionmaking channels" and thus trigger municipal liability. <u>Monell</u>, 436 U.S. at 691; <u>see also</u> <u>Bd. of Cty. Comm'rs v. Brown</u>, 520 U.S. 397, 404 (1997).

> "Custom and usage," in the sense of "persistent and widespread . . . practices" by municipal agents and employees, may be attributed to a municipality when the duration and frequency of the practices warrants a finding of either actual or constructive knowledge by the municipal governing body that the practices have become customary among its employees. <u>See</u> <u>id.</u> at 768. Actual knowledge may be evidenced by recorded reports to or discussions by a municipal governing body. Constructive knowledge may be

evidenced by the fact that the practices have been so widespread or flagrant that in the proper exercise of its official responsibilities the governing body should have known of them. See id.

Similarly, where a municipal policymaker has actual or constructive knowledge of such a course of customary practices among employees subject to the policymaker's delegated responsibility for oversight and supervision, the "custom or usage" may fairly be attributed to the municipality as its own. See id. at 769 ("custom" may be attributed to municipality through policymaker who has acceded to it).

Spell, 824 F.2d at 1387.

There is no evidence in the record to support a finding that the Festival Rule in question was persistent and widespread in its duration or frequency as to give the Town either actual or constructive notice. (See, e.g., Pl.'s Br., Ex. 2, Excerpts from Dep. of Reese Helms ("Helms Dep.") (Doc. 26-3) at 29 ("I am now [sic] aware if that rule has been in place the entire time.").) Further, this analysis brings the court back to the fundamental problems within this case: (1) as discussed above, it is unclear whether the Festival Rules should be considered a government, public, private, city, county, or state custom under this analysis; and (2) it is further unclear the capacity in which Defendants Helms and Kluttz were operating on Farmers Day.

Because Plaintiff has failed to meet his burden of "prov[ing] the existence of an official policy or custom that is fairly attributable to the municipality," Jordan by Jordan, 15

F.3d at 338, a <u>Monell</u> claim against the Town would not lead to a different result were Plaintiff permitted to join the Town of China Grove as a Defendant.

**B.    Fourth Amendment Claim and Conviction in District Court**

Because Defendants' arguments as to the remaining claims are based in large part upon the undisputed facts of the legal proceedings, this court will begin the analysis with Plaintiff's Fourth Amendment claim, which is based upon an alleged absence of probable cause to arrest.[4] Plaintiff's Third Cause of Action alleges that Defendants "did not have probable cause to arrest Plaintiff," (Compl. (Doc. 1) ¶ 127), and that Defendants provided false statements in support of the arrest and probable cause for the arrest, all of which were performed under color of state law. (<u>Id.</u> ¶¶ at 130-33). Plaintiff alleges these actions were in violation of the Fourth Amendment to the United States Constitution, which prohibits unreasonable searches and seizures. (<u>See</u> <u>id.</u> ¶ 126; Pl.'s Br. (Doc. 26) at 2.) "An arrest made in violation of a person's fourth amendment right to be free from unreasonable seizures, therefore, will give rise to a

---

[4] Plaintiff does not argue that the acquittal in North Carolina Superior Court following a trial de novo vitiates the effect of the conviction on the probable cause analysis unless that conviction was obtained through fraud or unfair means, nor does it appear that it would as a result of the analysis which follows.

claim under 42 U.S.C. § 1983." Sowers v. City of Charlotte,
3:14-cv-523-RJC-DCK, 2015 WL 8491498, at *3 (W.D.N.C. Dec. 9,
2015) (citing Street v. Surdyka, 492 F.2d 368 (4th Cir. 1974)).

The parties put forward different interpretations of the
evidence surrounding the actions of Plaintiff, the spectators,
and Defendant Helms prior to and during the arrest. Regardless
of any factual dispute, Defendants first contend that
Plaintiff's conviction in North Carolina district court
establishes probable cause for Plaintiff's arrest for a
violation of N.C. Gen. Stat. § 14-288.4 as a matter of law.
(See, e.g., Defs.' Br. (Doc. 23) at 18-19.)

"Probable cause to justify an arrest means facts and
circumstances within the officer's knowledge that are sufficient
to warrant a prudent person, or one of reasonable caution, in
believing, in the circumstances shown, that the suspect has
committed . . . an offense." Cahaly v. Larosa, 796 F.3d 399, 407
(4th Cir. 2015) (quoting Michigan v. DeFillippo, 443 U.S. 31, 37
(1979) (internal quotation marks omitted)). "The general rule is
that [a district court] conviction, even though it was later
overturned on appeal, conclusively establishes probable cause
for the arrest." Elabanjo v. Bellevance, No. 1:11CV349, 2014 WL
222097, at *6 (M.D.N.C. Jan. 21, 2014), report and
recommendation adopted, No. 1:11CV349, 2014 WL 793791 (M.D.N.C.

Feb. 26, 2014); see Hoover v. McDowell Cty., No. 96-2566, 1998 WL 398825, at *3 (4th Cir. June 15, 1998) (per curiam); Simpson v. Sears, Roebuck & Co., 231 N.C. App. 412, 415, 752 S.E.2d 508, 509-10 (2013); Myrick v. Cooley, 91 N.C. App. 209, 213, 371 S.E.2d 492, 495 (1988). Further, "[o]nce a pretrial seizure has been rendered reasonable by virtue of a probable cause determination by a neutral and detached magistrate, the continuing pretrial seizure of a criminal defendant — either by detention or by bond restrictions — is reasonable." Brooks v. City of Winston-Salem, 85 F.3d 178, 184 (4th Cir. 1996).

However, "where a conviction was procured by fraud or other unfair means, it [does] not conclusively establish probable cause." Simpson, 231 N.C. App. at 415, 752 S.E.2d at 509; see Elabanjo, 2014 WL 222097, at *6. As stated in an unpublished, per curiam Fourth Circuit opinion, Hoover v. McDowell County,

> The North Carolina Supreme Court defines probable
> cause as "the existence of such facts and
> circumstances, known to [the defendant] at the time,
> as would induce a reasonable man to commence a
> prosecution." Cook v. Lanier, 267 N.C. 166, 147 S.E.2d
> 910, 914 (N.C. 1966) (quoting Morgan v. Stewart, 144
> N.C. 424, 57 S.E. 149, 151 (N.C. 1907)). In North
> Carolina, as a general rule,
>
>> [i]n civil actions for malicious prosecution
>> . . . our appellate courts have followed the
>> majority rule that "absent a showing that
>> the conviction in District Court was
>> procured by fraud or other unfair means, the
>> conviction conclusively establishes the

existence of probable cause, even though the
plaintiff was acquitted in Superior Court."

Hoover, 1998 WL 398825, at *3 (quoting Myrick, 91 N.C. App. at

213, 371 S.E. 2d at 495). The North Carolina Court of Appeals,

in Simpson, explained in detail the relationship between the

probable cause determination as a result of a conviction in a

lower court and the necessity of establishing fraud or unfair

means to overcome that determination:

> Defendants cite to our Supreme Court's decisions
> in Griffis v. Sellars, 20 N.C. 315 (1838), and Overton
> v. Combs, 182 N.C. 4, 108 S.E. 357 (1921). In Griffis,
> plaintiff brought suit against defendant for wrongful
> prosecution. In the county court, plaintiff had been
> found guilty, but in the superior court, plaintiff had
> been found not guilty. Nonetheless, our Supreme Court
> held that "[t]he judgment in the county court
> justifies the institution of the prosecution in that
> court." Griffis, 20 N.C. at 317. Similarly, in
> Overton, our Supreme Court held that where in a former
> suit the essential issue is decided in favor of the
> plaintiff on the question of probable cause, that
> finding is conclusive and plaintiff may not be held
> liable in a subsequent complaint for malicious
> prosecution. Overton, 182 N.C. at 7, 108 S.E. at 358.

> We note, however, that this doctrine has eroded
> somewhat over time. In Moore v. Winfield, 207 N.C.
> 767, 178 S.E. 605 (1935), our Supreme Court clarified
> its decision in Overton, and held that despite its
> ruling in that case, "the great weight of authority is
> to the effect that a conviction and judgment in a
> lower court is conclusive, but if not sustained on
> appeal, it can be impeached for fraud or other unfair
> means in its procurement." Moore, 207 N.C. at 770, 178
> S.E. at 606.

> This Court later held that, where a conviction
> was procured by "fraud or other unfair means," it did
> not conclusively establish probable cause. Myrick v.

Cooley, 91 N.C. App. 209, 213, 371 S.E.2d 492, 495
(1988). In Myrick, we noted the following language
from the Supreme Court's opinion in State v. Sparrow,
276 N.C. 499, 173 S.E.2d 897 (1970), discussing the
effect of the appeal of a conviction from the district
court to the superior court.

> [W]hen an appeal of right is taken to the
> Superior Court, in contemplation of law it
> is as if the case had been brought there
> originally and there had been no previous
> trial. The judgment appealed from is
> completely annulled and is not thereafter
> available for any purpose.

Myrick, 91 N.C. App. at 213, 371 S.E.2d at 495
(quoting Sparrow, 276 N.C. at 507, 173 S.E.2d at 902).
This Court expressed doubt as to "whether a judgment
of the District Court which is overturned on the
merits should be afforded any more weight in these
circumstances than a magistrate's independent
determination of probable cause[,]" and noted that "it
seems incongruous to infer from a subsequent
conviction the existence of probable cause for the
initial arrest when it is clear that innocence of the
offense charged does not establish an absence of
probable cause for the arrest." Id. at 213–14, 371
S.E.2d at 495. Nonetheless, we held that "in the
absence of a showing that the District Court
conviction of Myrick was obtained improperly, the
conviction establishes, as a matter of law, the
existence of probable cause for his arrest and defeats
both his federal and state claims for false arrest or
imprisonment." Id. at 214, 371 S.E.2d at 495.

Simpson, 231 N.C. App. at 415, 752 S.E.2d at 509-10.

Defendants argue that "Plaintiff's conviction conclusively

establishes that probable cause existed for his arrest and

precludes a Section 1983 cause of action for each of the

constitutional violations asserted by Plaintiff." (Defs.' Br.

(Doc. 23) at 11.) Plaintiff responds that Defendants are not

entitled to immunity because the magistrate's issuance of an arrest warrant and Plaintiff's conviction (both constituting probable cause) were "obtained by unfair means, namely, false information." (Pl.'s Opp'n Br. (Doc. 31) at 27.) Plaintiff specifically argues that Defendant Helms "accused Cranford of calling his wife a whore and a prostitute, which the record reflects he did not. . . . Cranford generally referred to people dressing like whores and prostitutes as against Biblical principles, which is not the same as calling Helms' wife (or anyone else) a whore and a prostitute." (Id. at 27-28.) Plaintiff argues that "[t]he Arrest Warrant itself demonstrates the false information upon which it relied. . . . [T]here is no evidence that Cranford used abusive language or called anyone a whore or prostitute." (Id. at 28-29.)

The record does not support the conclusion that false information was used to obtain the warrant or that "fraud or other unfair means" were used to obtain the conviction as required by Simpson v. Sears, Roebuck & Co., 231 N.C. App. 412, 415, 752 S.E.2d 508, 509 (2013). "Fraud or unfair means" imposes a substantial evidentiary burden. In Simpson, the North Carolina Court of Appeals held that, at the motion to dismiss phase, allegations of a "false, fictitious, fabricated, and fraudulent written 'confession' . . . and . . . maliciously false and

fraudulent testimony" was sufficient to comply with Myrick's requirement of showing the district court verdict was procured "fraudulently and unfairly." Id. at 416, 752 S.E.2d at 510. In Moore v. Winfield, the Supreme Court of North Carolina upheld a jury verdict that found a defendant guilty of malicious prosecution where "it was shown by plenary evidence that the evidence upon which plaintiff was convicted in the recorder's court was false and perjured and secured by threats, intimidations, and promises of reward – or otherwise, through fraud." 207 N.C. 767, 770, 178 S.E. 605, 607 (1935).

Plaintiff's characterization of the record in support of his false information contention is inaccurate at best and disingenuous at worst. Although Plaintiff is correct that the statement that provoked his arrest is undisputed and could be construed literally to have addressed attire and the crowd generally, (Defs.' Br., Ex. 7, Audio Disc (Doc. 23) at 6:55 ("See a lot of ladies out here dressed like tramps and whores and prostitutes today.")), the statement could also reasonably be construed to have been directed to specific individuals in the crowd and intended to be provocative. Probable cause requires an evaluation of the "facts and circumstances within the officer's knowledge" and permits the drawing of reasonable inferences from those facts and circumstances. United States v.

Humphries, 372 F.3d 653, 657–58 (4th Cir. 2004). Several minutes prior to the statement about "tramps and whores and prostitutes," Plaintiff stated that he was "'fixin' to cross the line here in a minute." (Defs.' Br., Ex. 7, Audio Disc (Doc. 23) at 32:27.) Immediately following Plaintiff's statement, Defendant Helms told Plaintiff he could not call people whores and prostitutes, and Plaintiff immediately responded, "the Bible says it calls 'em whores and prostitutes." (Id.) While Plaintiff may have intended that statement as a nexus between biblical teaching and his comments, it is also reasonable to conclude that statement is further evidence of Plaintiff's intent to provoke the spectators. The Bible may indeed equate a manner of dress to whores and prostitutes, but Plaintiff, not the Bible, is the one who directed those comments to one or more spectators at the Festival.

Whether Plaintiff directed his remarks to specific spectators and intended to provoke violence is an issue of fact to be determined at trial by consideration of all relevant facts and circumstances. See, e.g., Maryland v. Craig, 497 U.S. 836, 845 (1990) ("The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact."). The record

clearly portrays Plaintiff, at two specific moments, pointing in the direction of a crowd of people including Defendants' family. (Defs.' Br., Ex. 5, Video Disc (Doc. 23) at 14:50, 14:54.) These physical gestures are accompanied by "talkin' to her . . . talkin' to your family" right before Plaintiff began saying he could "see a lot of ladies out here dressin' like tramps and whores and prostitutes." (Id. at 14:50-14:51.) The Arrest Warrant, indicating the facts the magistrate considered in finding probable cause, attributes the following behavior to Plaintiff: "SHOUTING TO THE VICTIMS THAT THEY WERE WHORES AND PROSTITUTES, MAKING REFERENCE TO THE WAY THEY WERE DRESSED." (Arrest Warrant (Doc. 23-8) at 2.) Plaintiff merely ceasing to point in the direction of certain individuals as he utters the words in question does not prevent a reasonable police officer, or any spectator for that matter, from interpreting the words Plaintiff uttered a mere second later as being targeted at those same individuals. Further, "[q]ualified immunity extends to government officials' objectively reasonable mistakes, 'regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" Gandy v. Robey, 520 F. App'x 134, 140 (4th Cir. 2013) (quoting Pearson v. Callahan, 555 U.S. 223, 231 (2009)). Even if Plaintiff had not been targeting Defendant

Helms's wife and daughter, a theoretical mistake on the part of Defendant Helms is reasonable giving the context, and certainly does not rise to the level of fraud or unfair means.[5]

This court finds that Plaintiff has failed to present sufficient evidence to create a material issue of fact "that the conviction in district court was procured by fraud or some other unfair means." See Simpson, 231 N.C. App. at 416, 752 S.E.2d at 510. In the absence of evidence to support such a finding, Plaintiff's conviction in North Carolina district court and the magistrate's determination "conclusively establishes the existence of probable cause, even though the plaintiff was acquitted in Superior Court." Elabanjo, 2014 WL 222097, at *6; see Brooks, 85 F.3d at 184. This court finds, as a result of Plaintiff's conviction for a violation of N.C. Gen. Stat. § 14-288.4 in the state district court, that there is no genuine issue of material fact that the conviction was obtained by "fraud or unfair means" and, as a result of the conviction, Defendant Helms had probable cause to arrest Plaintiff.

Even if Plaintiff's district court conviction does not establish probable cause as a matter of law, this court finds

_____

[5] Plaintiff's Complaint alleges serious Brady violations and claims that video evidence of Plaintiff's arrest was destroyed. (Compl. (Doc. 1) ¶¶ 40-69.) Plaintiff does not present any evidence to support these allegations nor does he argue these matters to the court in his summary judgment briefing.

that Defendant Helms "cannot be said to have violated a clearly established right" because "the right's contours" were not "sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." Plumhoff, 572 U.S. at ____, 134 S. Ct. at 2023. Existing precedent, outlined below, has not placed the "constitutional question [namely, whether there was probable cause to arrest the Plaintiff] confronted by the official beyond debate." Id. (internal quotation marks omitted).

The Arrest Warrant specifies that the "Offense in Violation of G.S." as "14-288.4." (Arrest Warrant (Doc. 23-8) at 2.) N.C. Gen. Stat. § 14-288.4 provides that "[d]isorderly conduct is a public disturbance intentionally caused by any person who . . . [m]akes or uses any utterance, gesture, display or abusive language which is intended and plainly likely to provoke violent retaliation and thereby cause a breach of the peace."[6] N.C. Gen. Stat. § 14-288.4(a)(2).

In Chaplinsky v. New Hampshire, the Supreme Court made clear that freedom of speech and freedom of worship "are among

_____

[6] Relying on Defendant Helms's deposition testimony, Plaintiff makes a number of arguments based on Defendant Helms's understanding of the elements of the relevant offense as opposed to the actual statutory offense elements. (Pl.'s Br. (Doc. 26) at 21.) This court is unaware of any authority suggesting an officer's understanding of the statute should be operative as opposed to the actual statute itself.

the fundamental personal rights and liberties which are
protected by the Fourteenth Amendment from invasion by state
action." 315 U.S. 568, 570-71 (1942). However, the Court went on
to recognize that "free speech is not absolute at all times and
under all circumstances. There are certain well-defined and
narrowly limited classes of speech, the prevention and
punishment of which have never been thought to raise any
Constitutional problem." Id. at 571-72 (footnotes omitted). One
of the classes of speech not subject to constitutional
protection is "insulting or 'fighting' words---those which by
their very utterance inflict injury or tend to incite an
immediate breach of the peace." Id. at 572 (footnote omitted).
The Supreme Court explained:

> It has been well observed that such utterances are no
> essential part of any exposition of ideas, and are of
> such slight social value as a step to truth that any
> benefit that may be derived from them is clearly
> outweighed by the social interest in order and
> morality. "Resort to epithets or personal abuse is not
> in any proper sense communication of information or
> opinion safeguarded by the Constitution, and its
> punishment as a criminal act would raise no question
> under that instrument." Cantwell v. Connecticut, 310
> U.S. 296, 309-10 (1940).

Id. (footnote omitted). The "fighting words exception is very
limited because it is inconsistent with the general principle of
free speech . . . ." Sandul v. Larion, 119 F.3d 1250, 1255 (6th
Cir. 1997). Nevertheless, the exception has not been overruled.

In State v. Summrell, the Supreme Court of North Carolina considered the meaning and constitutionality of § 14-288.4(a)(2) in terms of the use of abusive language in such a manner as to provoke a breach of the peace. 282 N.C. 157, 165, 192 S.E.2d 569, 574 (1972), overruled on other grounds sub nom, State v. Barnes, 324 N.C. 539, 380 S.E.2d 118 (1989). In Summrell, the defendant challenged the statute as overly broad. Relying upon Chaplinsky v. New Hampshire, 315 U.S. 568 (1941), the Supreme Court of North Carolina held § 14-288.4(a)(2) constitutional as construed by the trial court. Summrell, 282 N.C. at 169, 192 S.E.2d at 577. The trial court "construed Section (a)(2) to prohibit only words and conduct likely to provoke ordinary men to violence." Id. at 167, 192 S.E.2d at 575–76.

N.C. Gen. Stat. § 14-288.4(a)(2) is therefore limited to "words and conduct likely to provoke ordinary men to violence," id., a limitation which does not "unduly suppress free communication of views, religious or other, under the guise of conserving desirable conditions," Cantwell v. Connecticut, 310 U.S. 296, 308 (1940). Not only does the statute require "words and conduct likely to provoke ordinary men to violence," Summrell, 282 N.C. at 167, 192 S.E.2d at 575–76, but it also requires proof that the utterance or abusive language be

"intended and plainly likely to provoke violent retaliation."
§ 14-288.4(a)(2).

There is no issue of fact as to Plaintiff's specific comments which led to his arrest, as the audio and video evidence is identical. During the relevant preaching, Plaintiff begins:

> Oh, God's gonna judge you, wicked sinner — I'm talking to you. All you ladies need to learn how to put on some clothes, too. I'm talkin' to her. I'm talkin' to your family members. And all of those ladies over there. The Bible says that a woman should dress modestly. See a lot of ladies out here dressed like tramps and whores and prostitutes today. The Bible says you dress modestly. Today all you ladies who's dressed half-nekkid out here.

(Defs.' Br., Ex. 7, Audio Disc (Doc. 23) at 6:55.)

The principle disputed fact in this case is whether Plaintiff directed his comments specifically to individuals within the group of people in front of Plaintiff or whether Plaintiff simply used those words as part of his message. Plaintiff contends that "his use of those terms was part of his message that women should dress modestly and not expose body parts." (Pl.'s Opp'n Br. (Doc. 31) at 4 (citing Plaintiff's Dep. (Doc. 31-2) at 8).) Defendants contend that "[Defendant] Helms believed Plaintiff was addressing him and his family at this point because Plaintiff pointed in the direction of his wife, who was sitting next to him, and said 'I'm talking to you and

your family.'" (Defs.' Br. (Doc. 23) at 6–7 (citing Helms Dep. (Doc. 23-6) at 9-12).)

Here, Plaintiff pointed and loudly yelled in the direction of a group of women using a number of derogatory terms at a public event catered to (and attended by) families including small children.[7] (Defs.' Br., Ex. 5, Video Disc (Doc. 23) at 14:50.) Purporting to couch these statements in the teachings of the Bible or construing them as "free exercise of religion" does not somehow mitigate their potential "to provoke violent retaliation and thereby cause a breach of the peace," N.C. Gen. Stat. § 14-288.4, especially when those statements are directed to a specific individual. See State v. Benham, 222 N.C. App. 635, 731 S.E.2d 275 (2012) (unpublished table decision). This court need not indulge in any excessive mental gymnastics to imagine a situation where directly referencing individual women as "dressed like tramps, whores and prostitutes" at a public

---

[7] Plaintiff preached uninterrupted for the better part of an hour. (See Defs.' Br., Ex. 7, Audio Disc (Doc. 23).) While Plaintiff engaged in some heated conversations with a few passersby, (see supra Section I.A.ii), his arrest did not occur until he began repeatedly directing his comments at individual festivalgoers (see supra Section I.A.iii).

event could "provoke violent retaliation and thereby cause a breach of the peace."[8] See § 14-288.4.

Another court within this district has summarized North Carolina "disorderly conduct" law in the following manner:

> By statute, disorderly conduct includes a public disturbance caused by "[m]ak[ing] or us[ing] any utterance, gesture, display or abusive language which is intended and plainly likely to provoke violent retaliation." N.C. Gen. Stat. § 14-288.4(2). "Loud and boisterous" protests against the manner of an arrest and "profane, racist, and vulgar epithets" are sufficient to establish probable cause to arrest for disorderly conduct. State v. McLoud, 26 N.C. App. 297,

---

[8] Defendant Helms testified that had he not been a police officer, he would have been provoked to violence. Defendants argue that this testimony supports finding probable cause to arrest for disorderly conduct in violation of N.C. Gen. Stat. § 14-288.4. (See Defs.' Br. (Doc. 23) at 13-14.) This court does not find that testimony or argument persuasive at any level. First, the test of provoking violence is objective, not subjective. See, e.g., State v. Cunningham, 34 N.C. App. 72, 76, 237 S.E.2d 334, 337 (1977) (considering whether utterances "were likely to provoke the average person to retaliation"); Lamonds v. Pierce, No. 1:09-CV-962, 2013 WL 593821, at *4 (M.D.N.C. Feb. 15, 2013) (citing Cunningham for the proposition that the relevant inquiry is whether the utterances "were likely to provoke the average person to retaliation," not "a police officer . . . expected to show restraint"). Second, for Defendant to suggest that he was able to exercise self-control and not assault Plaintiff only because he was a law enforcement officer is paradoxical since Defendant responded to the statements by forcibly removing Plaintiff from the street and placing him under arrest, a response not available to the civilian spectators. Furthermore, as the Fourth Circuit emphasized in United States v. Lanning, we expect law enforcement officers to "exercise a higher degree of restraint than the average citizen[.]" 723 F.3d 476, 486 (4th Cir. 2013) (considering federal disorderly conduct regulation 36 C.F.R. § 2.34).

300, 215 S.E.2d 872, 874–75 (1975). Profane
protestations against a parking ticket accompanied by
a threat are sufficient to constitute disorderly
conduct. State v. Cunningham, 34 N.C. App. 72, 76, 237
S.E.2d 334, 337 (1977). Loudly insulting a teacher in
the hallway of a school is sufficient to constitute
disorderly conduct. State v. Tucker, 164 N.C. App.
232, 595 S.E.2d 452, 2004 WL 943775, at *2 (May 4,
2004) (disposition published in reporter table;
opinion unpublished). Profane outbursts in a
convenience store parking lot are sufficient to
establish probable cause to arrest for disorderly
conduct. State v. Raley, 155 N.C. App. 222, 573 S.E.2d
774, 2002 WL 31894939, at *3–4 (Dec. 31, 2002)
(disposition published in reporter table; opinion
unpublished).

Lamonds v. Pierce, No. 1:09-CV-962, 2013 WL 593821, at *3

(M.D.N.C. Feb. 15, 2013), aff'd, 549 F. App'x 200 (4th Cir.

2014).

Given the above case summaries, this court finds that

Defendant Helms "cannot be said to have violated a clearly

established right" because "the right's contours" were not

"sufficiently definite that any reasonable official in the

defendant's shoes would have understood that he was violating

it." Plumhoff, 572 U.S. at ____, 134 S. Ct. at 2023. "[E]xisting

precedent . . . [has not] placed the statutory or constitutional

question confronted by the official beyond debate." Id.

(internal quotation marks omitted). As such, Defendants are

entitled to immunity on Plaintiff's Fourth Amendment claims and

this court will grant their Motion for Summary Judgment as to

those claims.

"The Fourth Amendment prohibits law enforcement officers from making unreasonable seizures, and seizure of an individual effected without probable cause is unreasonable." <u>Brooks</u>, 85 F.3d at 183. "Where, as here, an arrest is based on probable cause, it cannot result in a constitutional violation. And in the absence of a constitutional violation, qualified immunity applies and the court need not address whether the constitutional right in question was clearly established." <u>Swick v. Wilde</u>, No. 1:10-cv-303, 2012 WL 3780350, at *9 (M.D.N.C. Aug. 31, 2012), <u>appeal dismissed and remanded,</u> 529 F. App'x 353 (4th Cir. 2013) (footnote omitted). Because probable cause existed for Plaintiff's arrest, this court finds that the arrest did not violate the Fourth Amendment. Further, even if probable cause did not exist for Plaintiff's arrest, this court finds that Plaintiff's Fourth Amendment rights were not "sufficiently definite [such] that any reasonable official in the defendant's shoes would have understood that he was violating [them,]" <u>Plumhoff</u>, 572 U.S. at ____, 134 S. Ct. at 2023, and thus finds that Defendants are entitled to qualified immunity with respect to this claim.

## C. <u>First Amendment Claims</u>

Defendants argue that "a plaintiff cannot state a claim of retaliatory arrest in violation of the First Amendment if the

underlying charges are supported by probable cause" and that "criminal conduct (even where speech is involved) is not protected by the First Amendment." (Defs.' Br. (Doc. 23) at 12.) Plaintiff responds that "there can be no question that Cranford's rights were clearly established at the time of the Farmers' Day Festival. The law against prior restraints on speech and restrictions on speech in traditional public fora has been established for many years." (Pl.'s Opp'n Br. (Doc. 31) at 25.)

It may be that "[t]he existence of probable cause for the arrest defeats Plaintiff's First Amendment claim, regardless of Defendant's motivation." <u>Elkins v. Broome</u>, 328 F. Supp. 2d 596, 600 (M.D.N.C. 2004) (collecting cases). However, Plaintiff has presented evidence that Plaintiff's statement caused Defendant Helms "to want to beat [Plaintiff] up or cause bodily harm to him," (Helms Dep. (Doc. 26-3) at 25), and when Plaintiff said, "[y]ou didn't want us here" Defendant Helms agreed with Plaintiff. (<u>Id.</u> at 27.) Although there was probable cause to arrest Plaintiff, it is possible, at least theoretically, that Defendant Helms also acted in retaliation for Plaintiff's exercise of his First Amendment rights. As a result, this court believes that Plaintiff's First Amendment claims are more

appropriately decided on the issue of whether Defendants are entitled to qualified immunity.

"In determining whether a defendant is entitled to qualified immunity, [this court] must decide (1) whether the defendant has violated a constitutional right of the plaintiff and (2) whether that right was clearly established at the time of the alleged misconduct." Ross v. Early, 746 F.3d 546, 560 (4th Cir. 2014) (citing Bland v. Roberts, 730 F.3d 368, 391 (4th Cir. 2013)); see also Maney v. Garrison, 681 F. App'x 210, 224 (4th Cir. 2017). "In reviewing Plaintiff's claims, the Court finds it helpful to consider the applicability of qualified immunity to each claim, beginning with the step of considering whether an objectively reasonable officer would have known [Defendant]'s conduct violated a clearly established constitutional right." Stokes v. Harris, No. 1:10CV935, 2014 WL 5149222, at *7 (M.D.N.C. Oct. 14, 2014).

An action, otherwise illegal under a valid criminal statute, does not become immunized by the First Amendment simply because it involves speech. United States v. Bly, 510 F.3d 453, 458 (4th Cir. 2007); United States v. Morison, 844 F.2d 1057, 1068 (4th Cir. 1988); United States v. Rowlee, 899 F.2d 1275, 1278 (2d Cir. 1990); Smithfield Foods, Inc. v. United Food & Commercial Workers Int'l Union, 585 F. Supp. 2d 789, 805 (E.D.

Va. 2008); <u>United States v. Biller</u>, No. CIVA 1:05CR14, 2006 WL
2221695, at *7 (N.D. W. Va. Aug. 2, 2006).

As described above, Plaintiff's conviction in North
Carolina district court establishes probable cause for arrest,
and a reasonable police officer would have believed that he or
she had the right to arrest Plaintiff for a violation of N.C.
Gen. Stat. § 14-288.4 without infringing on any constitutional
right of Plaintiff's. <u>See</u> <u>supra</u> Section III.B. Nevertheless,
because Plaintiff's remaining claims are grounded in First
Amendment rights, this court turns to "whether the right at
issue was clearly established at the time of [Plaintiff]'s
arrest." <u>McCoy v. City of Columbia</u>, 929 F. Supp. 2d 541, 561
(D.S.C. 2013).

As the district court in <u>McCoy</u> persuasively identifies:

> [I]t is conceptually possible that an officer
> effectuating an otherwise valid arrest (i.e., an
> arrest supported by probable cause) may be motivated
> by a desire to <u>retaliate</u> against the arrestee's
> assertion of First Amendment rights. In other words,
> merely showing that the Officer Defendants acted with
> probable cause may not foreclose the possibility of a
> First Amendment violation.

<u>Id.</u> at 559. "[T]he right at issue here is not the general right
to be free from retaliation for one's speech, but the more
specific right to be free from a retaliatory arrest that is
otherwise supported by probable cause." <u>Id.</u> at 562 (internal

quotation marks omitted). As analyzed above, this court has found that Plaintiff's arrest was supported by probable cause.

In McCoy, after a detailed analysis of relevant Supreme Court and Fourth Circuit precedent, the district court proceeded to find that "the [Supreme] Court stated that it 'has never recognized a First Amendment right to be free from a retaliatory arrest that is supported by probable cause' . . . . Nor had such a right become clearly established in the Fourth Circuit." Id. (quoting Reichle, 566 U.S. at 664–65). "Therefore, [Defendants] are entitled to qualified immunity because [Plaintiff]'s First Amendment right to be free from a retaliatory arrest that is supported by probable cause was not clearly established at the time of his arrest." Id.

This court agrees with the analysis in McCoy and finds the state of the law with respect to the right at issue at the time of Plaintiff's arrest to remain the same. As such, this court finds that qualified immunity applies to Defendants' actions. The law is not established, much less clearly established, that a law enforcement officer may not arrest an individual exercising free speech and religious rights when that officer has probable cause to believe a crime has been committed.

### D. Claims Against Defendant Kluttz

Plaintiff also alleges that Defendant Kluttz "reviewed the incident report, and agreed with the conclusion that a crime had been committed." (Pl.'s Br. (Doc. 26) at 6.) However, Plaintiff offers no legal theory as to how this court should hold Defendant Kluttz liable (whether in a supervisory, training or other capacity) for any of Defendant Helms's actions. Accordingly, all First and Fourth Amendment claims raised against Defendant Kluttz will be granted summary judgment for this reason as well.

### IV. DEFENDANTS' MOTION TO STRIKE (Doc. 49)

Plaintiff filed a Notice of Filing Supplemental Authority in Support of Motion for Summary Judgment on June 14, 2017. (Doc. 47.) The supplemental authority included therein was an Order and Preliminary Injunction issued by the Eastern District of North Carolina in O'Connell v. Town of Burgaw, No. 7:17-CV-65-D, 2017 WL 2570897 (E.D.N.C. June 13, 2017). (Ex. 1 attached to Notice (Doc. 47-1).)

Defendants responded with a Motion to Strike Plaintiff's Notice of Filing of Supplemental Authority and a supporting memorandum. (Docs. 49, 50.) Defendants argued in their memorandum that the submission of this authority was an improper use of Local Rule 7.3(i), which permits the suggestion of

"subsequent pertinent and significant authorities" prior to the court's ruling. (Doc. 50 at 1–2.) Defendants argue that the subsequent authority should be stricken because (1) the order addresses a city ordinance not before this court; (2) the authority is an "interim [o]rder" and not controlling on this court; (3) the Complaint in this case does not make allegations related to Town of China Grove ordinances; and (4) the order is not from the Fourth Circuit or Supreme Court and thus is not controlling on this court. (Id. at 2.)

In making this argument, Defendants cite to Wayne Brothers, Inc. v. North River Insurance Co. to argue that motions to strike subsequent authorities should be granted when the authority is not controlling upon the court. No. 1:01CV00842, 2003 WL 22213615, at *1 n.1 (M.D.N.C. Aug. 20, 2003) (Sharp, M.J.). This court is unpersuaded by Defendants' argument because it asks this court to construe Local Rule 7.3(i) as if it had not since been amended to no longer include the word "controlling." Compare LR 7.3(i) (1997) ("As an addendum to a brief, response brief, or reply brief, a suggestion of subsequently decided controlling authority, without argument, may be filed at any time prior to the court's ruling and shall contain only the citation to the case relied upon, if published, or a copy of the opinion if the case is unpublished."), with

L.R. 7.3(i) (2017)("As an addendum to a brief, response brief, or reply brief - or after oral argument but before decision - a suggestion of subsequent pertinent and significant authorities may be filed at any time prior to the Court's ruling and shall contain only the citation to the case relied upon, if published, or a copy of the opinion if the case is unpublished."). Because Local Rule 7.3(i) no longer limits suggestion of subsequent authorities to controlling authorities, this court will deny Defendant's Motion to Strike Plaintiff's Notice of Filing of Supplemental Authority. (Doc. 49.)

That being said, this court finds the O'Connell case distinguishable from the case at bar in significant ways. First, while the Town of Burgaw Ordinance in question in O'Connell was codified in the Town Code and thus fairly attributed to the Town, Plaintiff has not established that the Festival Rules in question constitute state action on behalf of the Town, County, State, or otherwise. See O'Connell, 2017 WL 2570897, at *1; supra Section III.A. Furthermore, the Town of Burgaw Ordinance in O'Connell is much broader than the Festival Rules in question. See id. at *3 ("On its face, the Code purports to redefine the grounds of the Pender County Courthouse Square and the sidewalks and streets located within the immediate area of the Pender County Courthouse Square as exempt from the First

Amendment from 7:00 a.m. on the day before the commencement of the festival until 7:00 p.m. on the day after the commencement of the festival by virtue of the Code's creation of an 'alternate public forum' on the western portion of the block located between West Bridgers Street and West Wilmington Street and immediately adjacent to North Dudley Street."). For these reasons, this court does not find the supplemental authority submitted by Plaintiff particularly instructive. Defendants' motion to strike will be denied.

## V.   CONCLUSION

For the reasons stated above, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (Doc. 22) is **GRANTED** as to all claims and that this case is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 25) is **DENIED.**

**IT IS FURTHER ORDERED** that Defendants' Motion to Strike Plaintiff's Notice of Filing of Supplemental Authority (Doc. 49) is **DENIED.**

A judgment in accordance with this Memorandum Opinion and Order will be entered contemporaneously herewith.

This the 30th day of September, 2017.

_William L. Osteen, Jr._
United States District Judge